HERITAGE BANK AND TRUST COMPANY, Plaintiff-Appellant, v. WILLIAM C. HARRIS, Illinois Commissioner of Banks and Trust Companies, Defendant-Appellee.

First District (1st Division)   No. 84—3110

Opinion filed April 29, 1985.

Adams, Fox, Adelstein & Rosen, of Chicago (Randall L. Mitchell, Joel S. Corwin, and Philip Fertik, of counsel), for appellant.

Neil F. Hartigan, Attorney General, of Springfield (Jill Wine-Banks, Solicitor General, and Patricia Rosen, Assistant Attorney General, both of Chicago, of counsel), for appellee.

JUSTICE O'CONNOR delivered the opinion of the court:

Plaintiff Heritage Bank and Trust Company (Heritage), is an Illinois State Bank. It desires to sell its assets, subject to its liabilities, to Joliet Federal Savings and Loan Association (Joliet Federal), a federally chartered mutual savings and loan association, doing business in Illinois. The sale is subject to the approval of the defendant William C. Harris, Illinois Commissioner of Banks and Trust Companies (Commissioner). He will not approve the sale unless Joliet Federal is "doing a banking business" within the meaning of the Illinois Banking Act (the Act) and is a "bank" within the meaning of section 68 of the Act (Ill. Rev. Stat. 1983, ch. 17, par. 380). To secure such a judicial determination, Heritage filed a declaratory judgment proceeding. The parties filed cross-motions for summary judgment. After argument, the trial court granted summary judgment for the Commissioner. Plaintiff appeals.

Sections 2 and 68 of the Illinois Banking Act provide in pertinent part (Ill. Rev. Stat. 1983, ch. 17, pars. 302, 380):

"Sec. 2. General definitions. In this Act, unless the context otherwise requires,

\* \* \*

'Bank' means any person doing a banking business whether subject to the laws of this or any other jurisdiction.

\* \* \*

'National Bank' means a national banking association located in this State.

'Person' means an individual, corporation, partnership, joint venture, trust estate or unincorporated association.

\* \* \*

'State Bank' means any banking corporation organized under or subject to this Act."

"Sec. 68. Voluntary Dissolution. A state bank may elect to dissolve voluntarily and wind up its affairs by the act of the bank in the following manner:

(1) The board of directors shall adopt a resolution recommending that the bank be dissolved voluntarily and directing that the question of such dissolution be submitted to a

vote at a meeting of stockholders * * *.

* * *

(3) At such a meeting a vote of the stockholders entitled to vote thereat shall be taken on a resolution to dissolve voluntarily the bank, which shall require for its adoption the affirmative vote of the holders of at least two-thirds of the outstanding shares entitled to vote at such meeting, * * *.

(4) Upon the adoption of such resolution, a statement of intent to dissolve shall be executed in duplicate by the bank, by its president or a vice-president, and verified by him, and the corporate seal shall be thereto affixed, attested by its secretary or cashier which shall set forth:

* * *

(h) An executed copy of the contract, if any there be, with another bank, or with the Federal Deposit Insurance Corporation or with both by which another bank assumes all the liabilities of the dissolving state bank.

* * *

(6) Duplicate originals of the statement of intent to dissolve * * * shall be delivered to the Commissioner for his approval. If the Commissioner disapproves the dissolution, he shall state his objections and give an opportunity to the dissolving bank to amend its statements of intent to dissolve to obviate such objections.

(7) If the Commissioner finds that the statement of intent to dissolve conforms to the provisions of this Act when all fees and charges have been paid as in this Act prescribed, and * * * if there is a contract pursuant to subsection (4)(h), when the Commissioner has approved such contract as being in compliance with the provisions of this Act and not prejudicial to creditors, the Commissioner shall indorse upon each of such duplicate originals the word 'Approved' and the month, day and year of his approval thereof."

Plaintiff's complaint in pertinent part alleged, and defendant admitted by answer:

As of March 31, 1984, Joliet Federal had total assets exceeding $500,000,000 and a ratio of capital to total assets of over 6.30%. It offers to consumers interest-bearing negotiable order-of-withdrawal (NOW) accounts and to commercial customers non-interest-bearing NOW accounts. These are the functional equivalents of personal and commercial checking accounts. It also offers savings accounts, takes

other time deposits and buys and sells commercial paper and bills of exchange. It makes loans of money on collateral security, negotiates loans and is authorized to make secured and unsecured loans for commercial, corporate, business or agricultural purposes to the extent of 10% of its assets. It buys and sells negotiable securities issued by the government, State, national and municipal, and by other corporations. It is also authorized to perform trust services.

On February 23, 1984, plaintiff agreed to sell substantially all its assets, subject to substantially all its liabilities, to Joliet Federal. The acquisition is expressly subject to State and Federal regulatory approvals. Joliet Federal and Heritage intend to accomplish the acquisition through the voluntary dissolution of Heritage, the selling bank, under section 68 of the Illinois Banking Act. Section 68(4)(h) provides for the acquisition of the assets of a dissolving "state bank" and the assumption of its liabilities, by "another bank." Section 2 defines the term "bank" as "any person doing a banking business whether subject to the laws of this or any other jurisdiction."

The defendant Commissioner is charged with administering the provisions of the Act. Section 68 requires the Commissioner's approval of the transaction here sought. The Commissioner refuses to approve the transaction. He does not deny that Joliet Federal meets all the definitional requirements of the term "bank" in section 2 of the Act and is "doing a banking business," but believes, however, that the Illinois legislature, in drafting the Act, did not contemplate the assumption of a dissolving State bank's liabilities by a savings and loan association. This belief is the sole basis on which the Commissioner refuses to approve the transaction.

Without a judicial declaration that Joliet Federal is a "bank" within the meaning of section 68(4)(h), the Commissioner will not approve Heritage's statement of intent, the transaction with Joliet Federal will not be consummated, and Heritage and its shareholders will lose profits and other substantial benefits from the sale.

Because there were no genuine issues of material fact, the parties filed cross-motions for summary judgment. On December 11, 1984, the trial court found that Joliet Federal meets all the definitional requirements of the term "bank" and is "doing a banking business" within the meaning of section 2, but that Joliet Federal is not a "bank" within the meaning of section 68. Accordingly it granted the Commissioner's motion for summary judgment, denied Heritage's motion and certified the issue as "a question of importance requiring immediate decision by the appellate court."

■■ The sole question before this court is whether the trial court erroneously concluded as a matter of law that Joliet Federal was not a "bank" within the meaning of section 68 of the Act. We hold that the trial court was in error.

Where an act defines its terms, those terms must be construed according to the definitions in the act. In *People ex rel. Scott v. Schwulst Building Center, Inc.* (1982), 89 Ill. 2d 365, 432 N.E.2d 855, the court said (89 Ill. 2d 365, 371):

> "Legislative intent is to be derived primarily from a consideration of the legislative language itself. 'There is no rule of construction which authorizes a court to declare that the legislature did not mean what the plain language of the statute imports.' (*Western National Bank v. Village of Kildeer* (1960), 19 Ill. 2d 342, 350.) Moreover, when an act defines its terms, those terms must be construed according to the definitions contained in the act. (*Krebs v. Thompson* (1944), 387 Ill. 471, 478.) Thus, the term 'commodity' as used in the Illinois Antitrust Act should be construed according to its definition in section 4."

So here, "bank" as used in section 68 should be construed according to its definition in section 2.

In section 2, the term "bank" was given a broad, functional definition:

> " 'Bank' means any person doing a banking business whether subject to the laws of this or any other jurisdiction."

In *Knass v. Madison & Kedzie State Bank* (1933), 354 Ill. 554, 188 N.E. 836, *dismissed* (1934), 292 U.S. 599, 78 L. Ed. 1463, 54 S. Ct. 632, the court considered the meaning of "doing a general banking business," saying (354 Ill. 554, 563):

> "The language 'doing a general banking business' may not by construction be extended beyond the meaning of like words used in the constitution of the State authorizing the creation of corporations 'with banking powers.' The words 'banking powers,' as used in the constitution, were in *Reed v. People*, 125 Ill. 592, construed to mean such powers as are ordinarily conferred upon and used by the various banks doing business in the country. The words 'general banking powers' are to be used in their common and ordinary sense. The ordinary and usual powers exercised by banks in doing general banking business are to loan money, to discount notes, receive deposits and deal in commercial exchange. They possess other powers, some of which are specifically conferred by statute, but these

are the usual powers exercised in doing a general banking business. (*Wedesweiler v. Brundage*, 297 Ill. 228; *People v. Doty*, 80 N.Y. 225; *Mercantile Nat. Bank v. City of New York*, 121 U.S. 138; *Exchange Bank of Columbus v. Hines*, 3 Ohio St. 1.) Banking business has expanded as the needs and demands of commercial life have grown."

The facts as alleged in the complaint and admitted by defendant constitute "doing a banking business." The trial court so found, but held that it was not a bank under section 68(4)(h).

Section 68 provides for the voluntary dissolution by a vote of the stockholders, after which a statement to dissolve shall be executed which shall set forth among other things (section 68(4)(h)):

"(h) an executed copy of the contract, if any there be, with another bank, or with the Federal Deposit Insurance Corporation or with both by which another bank assumes all the liabilities of the dissolving state bank."

The trial court was of the opinion that the legislature, in enacting the Banking Act, did not contemplate the assumption of a dissolving State bank's liabilities by a savings and loan association. This is pure speculation and flies in the face of the definition of "bank" in section 2.

The Illinois Banking Act is a comprehensive statute regulating banking in Illinois. One of its purposes is the protection of State bank customers upon the winding up of the business of a bank. To that end, the Commissioner is charged with the duty of approving the contract by which a State bank voluntarily dissolves and transfers its assets and liabilities to another bank.

The purpose behind the policy requiring approval by the then Auditor of Public Accounts (now the Illinois Commissioner of Banks and Trust Companies) was succinctly stated in *Continental Illinois National Bank & Trust Co. v. Peoples Trust & Savings Bank* (1937), 366 Ill. 366, 374, 9 N.E.2d 53:

"Amended section 15 expressly provided that one bank could contract in writing with another bank to assume the whole amount of debts and demands against it, but the contract must be first approved by the Auditor of Public Accounts. Such contracts had never before been sanctioned by statute. The provision has several salutary objectives in behalf of banks, stockholders and creditors. The auditor of Public Accounts is the head of the State banking system. He has the facilities for determining the financial strength or weakness of banks. He has the means of ascertaining, with reasonable ac-

curacy, whether a contract is fair or unconscionable, whether it is calculated to imperil the assuming bank or jeopardize the interests of those in the failing bank. He can protect the interests of the creditors and stockholders and compel strict performance of the agreement by the liquidating bank. These factors are essential elements of the amended act.

The very purpose of the amendments to section 15 was to give statutory sanction to assumption contracts provided they met with the approval of the Auditor of Public Accounts."

The court in that case noted that the old method of voluntary liquidation was ordinarily impractical, since few banks could make the required deposit. The court then declared that the "salutary" purpose of the 1929 amendments was to safeguard the interests of banks, stockholders, and creditors by permitting a sound purchasing institution to assume a State bank's liabilities with the approval of the auditor of public accounts. The approving official would be able to ascertain "with reasonable accuracy, whether a contract is fair or unconscionable, whether it is calculated to imperil the assuming bank or jeopardize the interests of those in the failing [liquidating] bank." *Continental Illinois National Bank & Trust Co. v. Peoples Trust & Savings Bank* (1937), 366 Ill. 366, 374.

■ The purpose of present section 68 is the same as the purpose of its predecessor, but the statutory scheme now provides a more comprehensive solution to the same problem. Under section 68(4)(h) the assuming institution may be any "bank," if the Commissioner is satisfied that the transaction conforms to the provisions of the Act.

As defined in section 2, "Bank" includes three elements: (1) any person; (2) doing a banking business; and (3) whether subject to the laws of this or any other jurisdiction. Joliet Federal fulfills all three.

(1) *Any person*. Section 2 defines a "person" as an individual, corporation, partnership, joint venture, trust estate or unincorporated association. Joliet Federal is a corporation.

(2) *Doing a banking business*. This defines the functions of a bank; it has nothing to do with the form or organization or identity of the controlling regulatory authority. The banking activities of Joliet Federal set out above, considered in the light of the Supreme Court's opinion defining banking, shows clearly that Joliet Federal satisfied and fulfilled this condition.

(3) *Whether subject to the laws of this or any other jurisdiction*. "Bank" is a person doing a banking business "whether subject to the laws of this or any other jurisdiction." By contrast, a "national

bank" must be "located in this State" and a "state bank" must be "organized under or subject to this Act." The Act thus imposes no jurisdictional limits on the range of institutions that may satisfy the definition of "bank." A "bank" may be an institution chartered under Federal law or the law of this or of another State. The trial court found that Joliet Federal, which operates under a Federal charter, is subject to the laws of the United States.

The section 2 definition of "bank" as thus related to function differs markedly from the definitions in that section of "state bank" and "national bank." The former is "any banking corporation organized under or subject to this Act"; the latter, "a national banking association located in this State." These two definitions refer to specific territorial jurisdictions over, or the location of, the banking institution. Each excludes certain classes, *i.e.*, "national bank" is defined to exclude institutions not organized as "national banking institutions"; "state bank," to exclude institutions not organized under or subject to the Banking Act. On the other hand, "bank" is defined solely by function. Statutory authorization, jurisdiction or organizational structure are immaterial.

Section 68 implements and confirms this distinction between the broad meaning of "bank" and the restrictive definition of "state bank." That section requires the dissolving institution to be a State bank, but allows the assuming institution to be simply "another bank."

This distinction is maintained in the Act. Section 31 (Ill. Rev. Stat. 1983, ch. 17, par. 338) states in relevant part:

> "Sec. 31. Emergency Sale of Assets or Merger. With the approval in writing of the Commissioner, *** any state bank may, by vote of a majority of its board of directors, and without a vote of its stockholders, sell all or any part of its assets to another state or national bank or to the Federal Deposit Insurance Corporation, or to both a state or national bank and the Federal Deposit Insurance Corporation, provided that a state or national bank assumes in writing all of the liabilities of the selling bank as shown by its records, other than the liabilities of the selling bank to its stockholders as such."

Thus, this section covering the emergency sale of assets or merger explicitly required the assuming institution to be a "state bank" or a "national bank." Section 68 has no such requirement for a voluntary dissolution. This difference is significant.

The Commissioner argues that the words "another bank" in section 68(4)(h) should be read as "another state bank," because not do

to so, he contends, makes the word "another" meaningless or superfluous. We disagree. That section provides for dissolution of "a state bank" by contract "with another bank, or with the Federal Deposit Insurance Corporation or with both by which another bank assumes all the liabilities of the dissolving state bank." In this context, by the words, "another bank" the legislature could only have meant a "bank" other than the dissolving State bank. This is the only natural way to read the statute. Far from rendering the word "another" meaningless or superfluous, this reading gives the word its ordinary meaning.

If the legislature had intended to provide that the assuming institution must be another State bank, it would have so stated as it did in section 31 of the Act, which provides for the emergency sale of assets of "any state bank" and expressly requires that the purchasing institution be "another state or national bank."

■ Although it is true that a court may add, delete, modify or alter words so as to effectuate the intent of the legislature (*People ex rel. Barrett v. Anderson* (1947), 398 Ill. 480, 76 N.E.2d 773), it "cannot read into the statute words which are not within the plain intention of the legislature as determined from the statute itself." (*Bovinette v. City of Mascoutah* (1973), 55 Ill. 2d 129, 133, 302 N.E.2d 313.) Both "bank" and "state bank" are terms defined in the Act; and a comparison with the language of section 31 shows that the legislature acted deliberately in using the words "another bank" not "another state bank," in section 68.

The Commissioner also argues that his construction of section 68(4)(h) is supported by the General Assembly's failure in 1983 to pass House Bill 1624 (as amended by amendment No. 1). That bill would have amended section 31 to provide that, in an emergency, a savings and loan association, with the commissioner's approval, could acquire the capital stock of a State bank. From the nonadoption of the bill, the Commissioner argues that the transaction contemplated by Heritage and Joliet Federal under section 68 is not authorized by existing law. We disagree.

The bill left the language of section 68 completely untouched. Moreover, the emergency acquisition of stock contemplated by the bill is very different from the nonemergency transfer of assets, subject to liabilities, provided for in section 68(4)(h). The General Assembly's failure to enact House Bill 1624 therefore cannot be interpreted to prohibit a savings and loan that does a banking business to acquire the assets of a State bank and assume its liabilities.

The amendment of section 31 to authorize the emergency sale of

a State bank's assets to "a savings and loan association" would be necessary because section 31, unlike section 68(4)(h), now authorizes the sale of a State bank's assets only to "another state or national bank." Section 68(4)(h) does not contain parallel restrictions, and there was therefore no reason to amend it.

The Commissioner further argues that State banks and savings and loan associations are regulated by separate statutes—State banks by the Illinois Banking Act; savings and loan associations, by the Illinois Savings and Loan Act (Ill. Rev. Stat. 1983, ch. 17, par. 3001 *et seq.*)—and that, because the Savings and Loan Act contains no authorization for a savings and loan to purchase the assets of a bank, the absence of such a provision conclusively demonstrates that the legislature never intended to allow a bank to be able to sell all of its assets to a savings and loan. We disagree. The Savings and Loan Act does not control the activities of federally chartered savings and loan associations. It merely assures that Federal associations enjoy, consistent with Federal law and regulations, "all of the rights, powers, privileges, immunities and exemptions" granted to State-chartered associations. (Ill. Rev. Stat. 1983, ch. 17, par. 3003.) If that act purported to prohibit federally chartered associations from purchasing the assets of another institution, the Federal Home Loan Bank Board regulations would preempt the Illinois Savings and Loan Act. See *Fidelity Federal Savings & Loan Association v. de la Cuesta* (1982), 458 U.S. 141, 73 L. Ed. 2d 664, 102 S. Ct. 3014.

Significantly, the fact that banks and savings and loan associations are regulated by different statutes was specifically recognized by the legislature in section 2 of the Banking Act when it defines "bank" to involve institutions subject to the laws of "this or any other jurisdiction."

The transaction between Joliet Federal and Heritage is not a cross-industry merger, but a sale of assets. Consequently it will not result in any conflict between regulatory authorities. Under section 68, the Commissioner has undivided authority over a State bank that enters into a contract to sell its assets to another "bank." After the contract is approved by the Commissioner, the selling bank dissolves and the purchasing institution simply continues to be regulated by the authorities that regulated it before the transaction. There is no occasion for conflict between regulatory agencies.

Because of the recent "intensification of competition" in the banking business between banks and savings and loan associations, the Commissioner argues that the latter should not be generally au-

thorized to purchase the assets of State banks until the legislature determines the effects of such transactions on competition. This argument, however, ignores that fact that Joliet Federal is a bank as defined in section 2 and that the purchase of a State bank's assets by another bank is governed by the statute and does not require judicial approval. Because the Act authorizes such transactions, only the legislature can amend the Act, not the courts.

The Commissioner further argues that this court should accord deference to its interpretation that a savings and loan association should not be considered a bank under the Illinois Banking Act. It is well settled, however, that an "administrative construction of a statute is not binding if it is erroneous." (*Illinois Power Co. v. Mahin* (1978), 72 Ill. 2d 189, 195, 381 N.E.2d 222.) Because we find that his interpretation is erroneous, it is not entitled to deference.

The trial court erroneously held that Joliet Federal was not a bank under section 68(4)(h). We find that it was a bank under that provision and reverse that judgment of the circuit court. We remand the cause to the circuit court of Cook County with directions to enter judgment declaring that Joliet Federal Savings and Loan Association is "doing a banking business" and is a "bank" within the meaning of section 68(4)(h) of the Illinois Banking Act. We further direct the circuit court to declare that the statement of intent and contract to be filed with William C. Harris, the Illinois Commissioner of Banks and Trust Companies, meets the statutory requirements and should be approved by the Commissioner in the manner prescribed by section 68(7) of that Act.

Reversed and remanded with directions.

CAMPBELL and BUCKLEY, JJ., concur.