FIRST MIDWEST BANK, N.A., Plaintiff-Appellant, v. IBP, INC., Defendant-Appellee.

Third District   No. 3—99—0683

Opinion filed May 23, 2000.

256

HOLDRIDGE, J., dissenting.

Steven L. Nelson (argued), of Snyder, Schwarz, Park & Nelson, of Rock Island, for appellant.

E. Lawrence Oldfield (argued), of Oak Brook, and John W. Robertson (argued), of Barash & Stoerzbach, of Galesburg, for appellee.

JUSTICE BRESLIN delivered the opinion of the court:

Plaintiff First Midwest Bank (Bank) sought a judgment against defendant IBP, Inc. (IBP), in the amount of $34,239.51 for failing to honor its security interest when IBP purchased hogs from Ronald and Rhonda Przybylski. The trial court granted IBP's motion for summary judgment based upon its determination that the Bank's notice of its security interest, pursuant to section 9—307 of the Illinois Uniform Commercial Code—Secured Transactions (Illinois Code) (810 ILCS 5/9—307 (West 1998)), was valid for one year only. We affirm and hold that notice of a security interest pursuant to section 9—307 of the Illinois Code is valid for only one year against a purchaser of farm products that are subject to the security interest.

## FACTS

On August 23, 1991, the Bank gave Ronald and Rhonda Przybylski a line of credit in the amount of $25,500 secured in part by livestock belonging to the Przybylskis. On April 8, 1992, the Bank gave the Przybylskis a $250,000 loan secured by the same livestock. On that same day, the Przybylskis signed a "Consent to Payment of Proceeds from Sale of Livestock" (Consent). They forwarded the Consent by certified mail to IBP, a recent purchaser of their hogs. A representative of IBP signed the Consent in May of 1992.

The Consent provided notice of the Bank's security interest in the Przybylskis' hogs and provided that IBP could extinguish that interest by issuing checks payable jointly to the Przybylskis and the Bank

whenever a purchase of the Przybylskis' hogs was made. IBP complied with the Consent requirements for approximately three years. In 1995, however, IBP began writing checks for the hogs payable to Ronald Przybylski only. Ronald would, at times, write the name of the Bank on the check; however, many checks remained payable exclusively to Ronald Przybylski. The amount of those checks not written jointly to the Przybylskis and the Bank totaled $34,239.51.

When the Bank sued IBP for $34,239.51, the trial court determined that IBP had received a valid notice of the Bank's security interest in the hogs in compliance with section 1631(e) of the United States Code (7 U.S.C. § 1631(e) (1994) (codified in Illinois as 810 ILCS 5/9—307 (West 1998))). The court found, however, that the Bank's notice was valid for one year only, until May of 1993. Having lost its suit due to its expired notice, the Bank appeals.

## ANALYSIS

The single issue before us is whether the trial court erred when it determined that notice of a security interest in farm products pursuant to section 9—307(4) of the Illinois Code is valid for one year only. Statutory construction is a question of law subject to our *de novo* review. *E&E Hauling, Inc. v. Ryan*, 306 Ill. App. 3d 131, 713 N.E.2d 178 (1999).

To understand section 9—307(4) of the Illinois Code, we must first understand the history predating this provision. Under section 9—307(1) of the Uniform Commercial Code (UCC) (Uniform Commercial Code § 9—307(1), 3A U.L.A. 256 (1992)), a buyer in the ordinary course of business "takes free of a security interest created by his seller even though the security interest is perfected and even though the buyer knows of its existence." This provision, however, excepts persons who buy farm products from one engaged in farming operations. Thus, under section 9—307(1) of the UCC, buyers of farm products are subject to the continuing interest of a secured lender.

During the late 1970s and the 1980s, numerous farm loan defaults resulted from large loan burdens, depressed land values, and low farm prices. D. Kershen & J. Hardin, *Farm Products Financing and Filing Service* Preface (1991). When farmers became unable to pay their loans, lenders began to seek payment from the purchasers of the farm products that had served as the collateral for the farm loans. Debate ensued regarding the justification for a lender's recovery against the purchaser of the secured farm products. Congress responded by enacting section 1631, commonly known as the "Food Security Act" (Act). 7 U.S.C. § 1631(e) (1994). Section 1631 now prevails over the farm products exception of the UCC as it applied to farm products purchas-

258

ers. D. Kershen & J. Hardin, *Farm Products Financing and Filing Service* Preface (1991).

■ Section 1631 provides in relevant part:

"(e) Purchases subject to a security interest

A buyer of farm products takes subject to a security interest created by the seller if—

   (1)(A) within 1 year before the sale of the farm products, the buyer has received from the secured party or the seller written notice of the security interest organized according to farm products that—

* * *

   (iv) will lapse on either the *expiration period of the statement* or the transmission of a notice signed by the secured party that the *statement* has lapsed, whichever occurs first[.]'' (Emphasis added.) 7 U.S.C. § 1631(e)(1)(A)(iv) (1994).

Congressional findings in the Act indicate that state laws at the time section 1631 was adopted often permitted a secured lender to enforce liens against the purchaser of farm products even though the purchaser was unaware that the sale of the products violated the lender's security interest. Such laws subjected the purchaser to double payment for the products: first at the time of purchase and again when the seller of the farm products failed to repay the lender. Congress determined that this exposure of purchasers of farm products to the risk of double payment inhibited free competition and constituted a burden on interstate commerce. Thus, Congress provided for the requirement of notice to the purchaser and for the eventual lapse of that notice. 7 U.S.C. § 1631(a) (1994).

Illinois responded by codifying section 1631(e) of the Act at section 9—307(4) of the Illinois Code (810 ILCS 5/9—307(4) (West 1998)).

The language in section 1631(e)(1)(A)(iv), quoted above and also found in section 9—307(4)(a)(iv) of the Illinois Code, indicates that there are two ways in which a valid notice of a security interest lapses: (1) upon the expiration period of the statement, or (2) upon transmission of a notice by the secured party that the statement has lapsed.

There is no debate between the parties that no correspondence was sent by the Bank to IBP indicating that the notice had lapsed. Both parties also ostensibly agree that the phrase "the expiration period of the statement" refers to the expiration of the financing statement. Section 1631(c) defines a "financing statement" as follows:

"(c) Definitions

* * *

   (4) The term 'effective financing statement' means a statement that—

\* \* \*

> (F) remains effective for a period of 5 years from the date of filing, subject to extensions for additional periods of 5 years each by refiling or filing a continuation statement within 6 months before the expiration of the initial 5 year period[.]" 7 U.S.C. § 1631(c)(4)(F) (1994).

This language reveals that the Act anticipates that states will maintain a central filing system. A central filing system provides a mechanism whereby financing statements are filed with a state's Secretary of State. Once filed, the financing statement has a five-year life unless one of the other provisions in subsection (F) occurs. The difficulty in our case arises because Illinois does not maintain a central filing system; rather, Illinois is a direct notice state.

The definition of a financing statement, quoted above from section 1631(c), does not similarly appear in the Illinois Code, presumably because Illinois is a direct notice state. Thus, the Bank did not, nor was it obligated to, file a financing statement that would expire after five years.

Accordingly, we must determine under what time frame the Illinois legislature intended notice of a security interest to remain valid when it codified section 1631(e) of the Act as section 9—307(4) of the Illinois Code. In so doing, we are mindful that a court may add, delete, modify or alter words so as to effectuate the intent of the legislature though it cannot read into the statute words that are not within the plain intention of the legislature as determined from the statute itself. *Heritage Bank & Trust Co. v. Harris*, 132 Ill. App. 3d 969, 478 N.E.2d 526 (1985).

On appeal, the Bank contends that the trial court erred in determining that its notice was effective for only one year. The Bank argues that section 9—307(4) of the Illinois Code should be interpreted by this court to mean that the notice sent to a buyer by the secured party lapses only when that notice either contains an expiration period within it or when the secured party later sends notice of lapse.

IBP submits that the word "statement" found in subsection (4)(a)(iv) of section 9—307 should refer back to the one-year time frame in subsection (4)(a) within which a secured party must notify a buyer of farm products of its security interest. Accordingly, under IBP's interpretation, notice of a security interest would expire after one year from the time it is given to the buyer of the farm products.

■ We agree with IBP. Unlike in the Act, a definition of the word "statement" in the Illinois Code does not appear immediately prior to the section we must now interpret. What does appear, however, is a one-year time frame within which a secured party has to notify a

buyer of its security interest. In light of the fact that we may read into a statute only words that are within the plain intention of the legislature as determined from the statute itself, we hold that valid notice of a security interest in farm products lapses after one year. This is the most logical interpretation of section 9—307(4).

Under the Bank's interpretation, a lender could conceivably enforce its security interest against a buyer of farm products *ad infinitum* without ever having to renotify such buyer of the interest if the lender does not put an expiration date in the notice. We do not believe that this scenario comports with a reasonable interpretation of the Illinois Code. Even the Act requires a lender in a central filing state to refile its notice of a security interest in the form of a financing statement every five years. See 7 U.S.C. § 1631(c)(4)(F) (1994). To require a purchaser of farm products to abide by one notice forever is an unrealistic, unreasonable burden given the history behind this provision.

Moreover, the Bank's request for this court to order IBP to pay it the sum of $34,239.51, which sum IBP has already paid to the Przybylskis for the purchase of their hogs, is in direct contravention of the purpose of the notice requirement. See 7 U.S.C. § 1631(a) (1994). As noted previously, Congress was concerned that the risk of double payment by the purchaser of farm products inhibited free competition and constituted a burden on interstate commerce.

In their treatise entitled *Farm Products Financing and Filing Service*, the authors note their belief that notice of a security interest to the buyers of farm products lapses after one year in a direct notice state, rather than after five years when the financing statement lapses in a central filing state. D. Kershen & J. Hardin, *Farm Products Financing and Filing Service* § 10.07 (1991). They attach the phrase "presale notification system" (PNS) to the notice required in a direct notice state. These authors note that the language at issue here, found in section 1631(e)(1)(A)(iv) of the Act, was transplanted from the definition of an effective financing statement (EFS) into the presale notification system (PNS) without explanation by the Conference Committee. They contend:

> "[A]lthough 'expiration period' is not defined, it presumably refers to Subsections 1631(e)(1)(A) and 1631(g)(2)(A), which state that buyers, commission merchants, and selling agents take subject to a security interest if they receive a PNS notice covering the farm products 'within one year before the sale.' Unlike the EFS expiration, which is a five-year period measured from the 'date of filing' forward, PNS notice effectiveness is measured one year from the sale date backward." D. Kershen & J. Hardin, *Farm Products Financing and Filing Service* § 10.07 (1991).

We find this discussion of section 1631 of the Act to be persuasive. We conclude that a one-year expiration period for notices of a security interest is the most reasonable interpretation of section 9—307(4) of the Illinois Code. Therefore, the Bank's notice to IBP of its security interest in the Przybylskis' hogs expired after one year from the date the notice was served upon and acknowledged by IBP in May of 1992. Accordingly, we affirm the trial court's grant of IBP's motion for summary judgment.

For the foregoing reasons, the judgment of the circuit court of Knox County is affirmed.

Affirmed.

LYTTON, J., concurs.

JUSTICE HOLDRIDGE, dissenting:

I respectfully dissent. At issue here is the time period during which a perfected security interest in farm products remains in effect. The Uniform Commercial Code provides that a buyer takes farm products subject to a security interest if:

"within one year before the sale of the farm products, the buyer has received from the secured party or the seller written notice of the security interest organized according to farm products that:

\* \* \*

(iv) will lapse on either the expiration period of the statement or the transmission of a notice signed by the secured party that the statement has lapsed, whichever occurs first[.]" 810 ILCS 5/9—307 (West 1996).

Here, IBP acknowledged receipt of a written statement of the Bank's security interest in the hogs raised by the Przybylskis. The statement informed IBP, as a potential buyer, that a security interest existed in the Przybylskis' hogs "until Purchaser [IBP] is otherwise notified in writing by Lender [Bank]."

I cannot agree with the majority's conclusion that notice of the secured party's interest expires after one year when language of the statute clearly states that such notice lapses only upon the expiration date contained in the written statement or upon the secured party's written transmission that its interest has been satisfied. I agree with the Bank's contention that the plain language of section 9—307(4) of the Uniform Commercial Code (810 ILCS 5/9—307(4) (West 1996)) can only be interpreted to mean that notice sent to a buyer by a secured party lapses only when the notice either contains an expiration period within it or when the secured party sends notice that its

262

interest has been satisfied. I see no need to resort to interpretation of the federal statute where the language of our Illinois statute is quite clear.

Unlike the majority, I see no unrealistic or unreasonable burden for a purchaser that has been given direct notice of a security interest by a specific secured party to secure a release from that secured party prior to making payment to the secured party's debtor. For example, in the instant matter, IBP honored the Bank's security interest even after the alleged one-year effective date had expired and it did so without any "unrealistic or unreasonable burden." Likewise, it could have, without burden, continued to honor the Bank's security interest by making the checks payable to both the Przybylskis and the Bank.

For the foregoing reasons, I would reverse the judgment of the circuit court of Knox County and remand for entry of judgment for the plaintiff Bank.