# ILLINOIS OFFICIAL REPORTS

## Appellate Court

*Cornerstone Bank & Trust, N.A. v. Consolidated Grain & Barge Co.*, **2011 IL App (4th) 100715**

| | |
|---|---|
| Appellate Court Caption | CORNERSTONE BANK AND TRUST, N.A., Plaintiff-Appellant and Cross-Appellee, v. CONSOLIDATED GRAIN AND BARGE COMPANY, a Missouri Corporation; CARGILL, INC., a Delaware Corporation; CARROLLTON FARMERS ELEVATOR, a Corporation; TRI COUNTY FS, INC., a Corporation; PHI FINANCIAL SERVICES, INC., a Corporation; and COMMODITY CREDIT CORPORATION, a Corporation Acting Through the United States Department of Agriculture, Defendants-Appellees and Cross-Appellants. |
| District & No. | Fourth District<br>Docket No. 4–10–0715 |
| Filed | June 27, 2011 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | Where plaintiff bank did not comply with notice requirements of section 9–320(f) of the Uniform Commercial Code, it did not "perfect its security interest" in the grain a farmer sold to defendant grain elevator, and section 1631 of the Food Security Act preempted the portions of the Code that conflicted with the Act's expressed purpose of removing obstructions to interstate commerce; therefore, the grain elevator's protected interest as a purchaser of farm product prevailed. |
| Decision Under Review | Appeal from the Circuit Court of Greene County, No. 10–L–5; the Hon. James W. Day, Judge, presiding. |

| | |
|---|---|
| Judgment | Affirmed. |
| | |
| Counsel on Appeal | Charles E. Theivagt (argued), of Gustine, Theivagt, Davis & Collins, Ltd., of Carrollton, for appellant. |
| | |
| | Mark S. Cochran (argued), of Bellatti, Barton & Cochran, LLC, of Springfield, for appellees. |
| | |
| Panel | JUSTICE STEIGMANN delivered the judgment of the court, with opinion. |
| | Presiding Justice Knecht and Justice McCullough concurred in the judgment and opinion. |

**OPINION**

¶ 1    This case presents the question of whether section 1631 of the Food Security Act of 1985 (7 U.S.C. § 1631 (2006)), which seeks to remove burdens and obstructions to interstate commerce in farm products, preempts the pertinent portions of the Uniform Commercial Code (UCC) (810 ILCS 5/1–103 through 13–101 (West 2008)) that conflict with the expressed purpose of the Act. We conclude that in this case, the Act preempts the UCC.

¶ 2    Following a July 2010 hearing, the trial court entered an order that (1) denied the summary-judgment motion of plaintiff, Cornerstone Bank and Trust, N.A. (the Bank), as to count I and (2) granted the summary-judgment motion of defendant, Consolidated Grain and Barge Company (Consolidated), with regard to the competing interests the Bank and Consolidated had in certain farm products. Specifically, the court found that (1) section 1631 of the Act did not preempt the application of Illinois law to resolve the parties' dispute and (2) by failing to comply with the notice requirements of section 9–320(f) of the UCC (810 ILCS 5/9–320(f) (West 2008)), the Bank did not "perfect its security interest" and, thus, Consolidated's protected interest as a purchaser of farm products prevailed. In August 2010, the Bank filed a motion for leave to file an amended count I, which the trial court later denied.

¶ 3    The Bank appeals, arguing that the trial court erred by (1) denying its summary-judgment motion, (2) granting summary judgment in Consolidated's favor, and (3) denying its motion for leave to file an amended count I. Consolidated cross-appeals, arguing that the court erred by finding that section 1631 of the Act did not preempt the pertinent portions of the UCC that conflict with the expressed purpose of the Act.

¶ 4    Because we conclude that the Bank failed to protect its perfected security interest under

the expressed terms of section 1631(e) of the Act (7 U.S.C. § 1631(e) (2006)), we affirm.

¶ 5                                    I. BACKGROUND

¶ 6        The following facts were gleaned from the parties' pleadings and other supporting documents filed in the trial court.

¶ 7        At five different times between May 2001 and May 2007, the Bank loaned Rick Beiermann, a farmer, and his wife (collectively, the Beiermanns) a total of $985,143 to finance their farm operations. In exchange, the Beiermanns executed five promissory notes that were each secured, in part, by the following farm products: "All crops [and] equipment now owned or hereafter acquired." To perfect its continuing security interest in the farm products, the Bank filed the appropriate financing statements pursuant to section 9–310(a) of the UCC (810 ILCS 5/9–310(a) (West 2006)).

¶ 8        In 2005 and 2006, Rick entered into six separate contracts to sell a total of 55,000 bushels of corn to Consolidated for delivery between December 2005 and December 2007. In exchange, Consolidated, which was engaged in the business of buying farm products from local farmers, agreed to purchase the corn from Rick at a predetermined price.

¶ 9        At the start of the 2008 crop year, Rick planted soybeans on farmland he rented. In August 2008–after defaulting on their promissory notes to the Bank–a confession of judgment in the amount of $748,779 was filed against the Beiermanns and in favor of the Bank. During the time that the Beiermanns were addressing their financial problems with the Bank, Consolidated was taking various actions to accommodate Rick's failure to deliver the 55,000 bushels of corn by first orally extending and modifying the existing grain contracts and then cancelling and implementing new grain contracts.

¶ 10       In July 2008, the Bank sent Consolidated a "Notice of Security Interest" by certified mail. In particular, the Bank's notice contained the following information: (1) the Bank, identified by name and address, as the secured party; and (2) the Beiermanns, identified by individual name, address, and a single social-security number, as debtors to the Bank. In addition, the notice stated the following:

> "The Debtor has named you as a potential buyer, commission merchant or selling agent of farm products. You are hereby given notice pursuant to the Food Security Act of 1985 that the Debtor has given a security interest to the secured party in (1) the farm products described below and (2) any proceeds from the sale of such farm products. This is effective for 1 year from the date you receive it."

Thereafter, the notice identified the farm products subject to the Bank's perfected security interest as "all" the "corn, soybeans, and wheat" from the 2008 crop year.

¶ 11       In December 2008, Rick delivered 953 bushels of corn and 6,082 bushels of soybeans to Consolidated, which it later sold for $2,370 and $59,392, respectively. After paying Rick's farmland-rental lien, Consolidated credited (1) $2,370 to Rick's existing contracts and (2) $45,266 to the contracts Rick had previously defaulted on.

¶ 12       In April 2010, Cornerstone filed a four-count complaint, suing (1) Consolidated; (2) Cargill, Inc.; (3) Carrollton Farmers Elevator; and (4) Tri County FS, Inc., Phi Financial

-3-

Services, and Commodity Credit Corporation. Count I sought to enforce the Bank's perfected security interest in the Beiermanns' farm products over Consolidated's contracted right to those farm products. (The remaining counts concerned the Bank's competing interest in the Beiermanns' farm products among other grain companies and the priority of its security interest among other lending institutions, which are not the subject of this appeal.)

¶ 13       In June 2010, Consolidated filed an amended answer and affirmative defense. With regard to its affirmative defense, Consolidated claimed, in pertinent part, that it "took the Beiermanns' grain free and clear of [the Bank's] security interest" because the Bank failed to comply with the written notice requirements of section 1631(e) of the Act. In particular, Consolidated noted that the Bank's July 2008 notice of security interest did not "specify the county or counties in which the farm products were produced or located." Shortly thereafter, Consolidated filed a motion for summary judgment pursuant to section 2–1005(b) of the Code of Civil Procedure (Civil Code) (735 ILCS 5/2–1005(b) (West 2008)), alleging that as a "buyer in the ordinary course of business," as defined by section 1631(c)(1) of the Act, it took the Beiermanns' farm products free of the Bank's perfected security interest pursuant to section 1631(d) of the Act (7 U.S.C. §§ 1631(c)(1), (d) (2006)).

¶ 14       In July 2010, the Bank filed a motion for summary judgment on count I of its complaint, claiming that section 1631 of the Act was not applicable because Consolidated was not a buyer in the ordinary course of business as defined by section 1–201(b)(9) of the UCC (810 ILCS 5/1–201(b)(9) (West 2008)) but, instead, merely "exercised its right of offset against the grain to satisfy [Rick's] indebtedness." The Bank asserted that as "a person that acquires goods in a transfer in bulk or as security for or in total or partial satisfaction of a money debt," Consolidated was expressly excluded from the UCC definition of a buyer in the ordinary course of business. 810 ILCS 5/1–201(b)(9) (West 2008).

¶ 15       At a July 2010 hearing on the parties' respective motions for summary judgment, the trial court considered, in part, (1) Consolidated's arguments that section 1631 of the Act preempts the UCC with regard to protections for purchasers of farm products and (2) the Bank's argument that the farm-product protections are governed by section 9–320 of the UCC (810 ILCS 5/9–320 (West 2008)). In August 2009, the court entered a written order that (1) denied the Bank's summary-judgment motion and (2) granted summary judgment in favor of Consolidated. Specifically, the court found that (1) "resolution of this matter under Illinois law has not been preempted under section 1631 of the [Act]" and (2) because the Bank did not "perfect its security interest" by failing to "specify the county and a reasonable description of the property" as required by section 9–320(f) of the UCC, Consolidated's financial interest in the farm products prevailed.

¶ 16       In August 2010, the Bank filed a motion for leave to file an amended count I. In September 2010, the trial court entered a docket entry, denying the Bank's motion.

¶ 17       This appeal followed.

¶ 18                                    II. ANALYSIS
¶ 19                    A. The Trial Court's Summary Judgment Determinations
¶ 20       The Bank argues, in part, that the trial court erred by (1) denying its summary-judgment

motion and (2) granting summary judgment in Consolidated's favor. Specifically, the Bank contends that the court erred by (1) finding that the Bank had not perfected its security interest in the Beiermanns' farm products as required by section 9–310(a) of the UCC; (2) finding that Consolidated was a buyer in the ordinary course of business in contravention of section 1–201(b)(9) of the UCC; (3) failing to recognize the Bank's prior lien status over Consolidated in contravention of section 9–322(a)(2) of the UCC; and (4) finding that the Bank failed to comply with the notice requirements of section 9–320(f) of the UCC.

¶ 21    For its part, Consolidated argues that the trial court erred by finding that section 1631 of the Act did not preempt the pertinent portions of the UCC that conflict with the expressed purpose of the Act.

¶ 22    We first consider the parties' respective arguments pertaining to the preemption issue, which we find dispositive.

¶ 23                    1. *Summary Judgment and the Standard of Review*

¶ 24    "Summary judgment is appropriate where the pleadings, affidavits, depositions, and admissions on file, when viewed in the light most favorable to the nonmoving party, demonstrate that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." *West Bend Mutual Insurance v. Norton*, 406 Ill. App. 3d 741, 744, 940 N.E.2d 1176, 1179 (2010). We review *de novo* a trial court's decision on a motion for summary judgment. *Benson v. Stafford*, 407 Ill. App. 3d 902, 911, 941 N.E.2d 386, 397 (2010). In determining whether the trial court reached the proper result, we need not confine ourselves to the court's rationale but may instead affirm the grant of summary judgment on any basis supported by the record. *Santa's Best Craft, L.L.C. v. Zurich American Insurance Co.*, 408 Ill. App. 3d 173, 180, 941 N.E.2d 291, 299 (2010).

¶ 25                    2. *The Federal and State Statutes at Issue*
¶ 26                    a. The History and Pertinent Portions
                              of Section 1631 of the Act

¶ 27    In *First Midwest Bank, N.A. v. IBP, Inc.*, 314 Ill. App. 3d 255, 257-58, 731 N.E.2d 839, 841 (2000), the Third District noted the following history underlying section 1631 of the Act:

    "During the late 1970s and the 1980s, numerous farm loan defaults resulted from large loan burdens, depressed land values, and low farm prices. [Citation.] When farmers became unable to pay their loans, lenders began to seek payment from the purchasers of the farm products that had served as the collateral for the farm loans. Debate ensued regarding the justification for a lender's recovery against the purchaser of the secured farm products. Congress responded by enacting section 1631, commonly known as the 'Food Security Act' ***. [Citation.] Section 1631 now prevails over the farm products exception of the UCC as it applied to farm products purchasers. [Citation.]"

¶ 28    Sections 1631(a), 1631(b), 1631(c)(1), 1631(c)(5), 1631(c)(10), and 1631(d) of the Act provide, in pertinent part, the following:

    "(a) Congressional findings

Congress finds that–

(1) certain State laws permit a secured lender to enforce liens against a purchaser of farm products even if the purchaser does not know that the sale of the products violates the lender's security interest in the products, lacks any practical method for discovering the existence of the security interest, and has no reasonable means to ensure that the seller uses the sales proceeds to repay the lender;

(2) these laws subject the purchaser of farm products to double payment for the products, once at the time of purchase, and again when the seller fails to repay the lender;

(3) the exposure of purchasers of farm products to double payment inhibits free competition in the market for farm products; and

(4) this exposure constitutes a burden on and an obstruction to interstate commerce in farm products.

(b) Declaration of purpose

The purpose of this section is to remove such burden on and obstruction to interstate commerce in farm products.

(c) Definitions

For the purposes of this section–

(1) The term 'buyer in the ordinary course of business' means a person who, in the ordinary course of business, buys farm products from a person engaged in farming operations who is in the business of selling farm products.

* * *

(5) The term 'farm product' means an agricultural commodity such as wheat, corn, soybeans *** that is in the possession of a person engaged in farming operations.

* * *

(10) The term 'person' means any individual, partnership, corporation, trust, or any other business entity.

* * *

(d) Purchases free of security interest.

Except as provided in subsection (e) of this section and *notwithstanding any other provision of Federal, State, or local law*, a buyer who in the ordinary course of business buys a farm product from a seller engaged in farming operations shall take free of a security interest created by the seller, even though the security interest is perfected; and the buyer knows of the existence of such interest." (Emphasis added.) 7 U.S.C. §§ 1631(a), (b), (c)(1), (c)(5), (c)(10), (d) (2006).

Section 1631(e) of the Act, entitled "Purchases subject to a security interest," mandates, in part, that a "buyer of farm products takes subject to a security interest created by the seller if" the buyer has received from the secured party or the seller a written notice, within one year before the sale of the farm products, that contains the following information:

"(I) the name and address of the secured party;

"(II) the name and address of the person indebted to the secured party;

"(III) the social security number, or other approved unique identifier, of the debtor or, in the case of a debtor doing business other than as an individual, the Internal Revenue Service taxpayer identification number, or other approved unique identifier, of such debtor; and

"(IV) a description of the farm products subject to the security interest created by the debtor, including the amount of such products where applicable, crop year, and the name of each county or parish in which the farm products are produced or located[.]" 7 U.S.C. § 1631(e)(1)(A)(ii) (2006).

In addition, section 1631(f) of the Act provides that the term "receipt" "shall be determined by the law of the State in which the buyer resides." 7 U.S.C. § 1631(f) (2006); see 810 ILCS 5/9–320(f)(2) (West 2008) ("[A] buyer of farm products has received notice from the secured party or seller when written notice of the security interest is sent to the buyer by registered or certified mail.").

¶ 30                          b. The Codification of Section 1631
                                   of the Act Within the UCC

¶ 31    In July 2000, the Illinois legislature expressed its approval of sections 1631(d) and 1631(e) of the Act by (1) deleting the farm products exception that was contained within section 9–307(1) of the UCC and (2) adding sections 9–320(a) and 9–320(f), respectively, to the UCC, which were in many instances–although not entirely–verbatim transcriptions. See 810 ILCS 5/9–320(a), (f) (West 2008) (as added by Pub. Act 91–893, § 5 (eff. July 1, 2001) (2000 Ill. Legis. Serv. 2424 (West))). However, the legislature did not codify section 1631(c)(1) of the Act, which, as we have previously noted, defined the term "buyer in the ordinary course of business" for purposes of the Act.

¶ 32    Instead, section 1–201(b)(9) of the UCC defines a buyer in the ordinary course of business, as follows:

" 'Buyer in ordinary course of business' means a person that buys goods in good faith, without knowledge that the sale violates the rights of another person in the goods, and in the ordinary course from a person, other than a pawnbroker, in the business of selling goods of that kind. A person buys goods in the ordinary course if the sale to the person comports with the usual or customary practices in the kind of business in which the seller is engaged or with the seller's own usual or customary practices. *** A buyer in ordinary course of business may buy for cash, by exchange of other property, or on secured or unsecured credit, and may acquire goods or documents of title under a preexisting contract for sale. Only a buyer that takes possession of the goods or has a right to recover the goods from the seller under Article 2 may be a buyer in ordinary course of business. 'Buyer in ordinary course of business' *does not include a person that acquires goods in a transfer in bulk or as security for or in total or partial satisfaction of a money debt*." (Emphasis added.) 810 ILCS 5/1–201(b)(9) (West 2008).

¶ 33                                    3. *Consolidated's Preemption Claim*

¶ 34        As previously noted, Consolidated argues that the trial court erred by finding that section 1631 of the Act did not preempt the pertinent portions of the UCC that conflict with the expressed purpose of the Act. In particular, Consolidated contends that the plain language of the Act sought to enhance protections for buyers of farm products among the States to eliminate what Congress classified as an obstruction to interstate commerce in farm products. In furtherance of that goal, Consolidated asserts that Congress expressly preempted any other provision of federal, state, or local law that conflicted with the enhanced protections of farm purchasers.

¶ 35        In response, the Bank does not dispute Consolidated's preemption contentions. Indeed, citing *Food Services of America v. Royal Heights, Inc.*, 871 P.2d 590, 594 (Wash. 1994), and *First Midwest Bank, N.A.*, 314 Ill. App. 3d at 257, 731 N.E.2d at 841, the Bank acknowledges that by enacting section 1631, Congress intended to preempt state law as it applied to the farm-products exception of the UCC. Instead, the Bank contends that section 1631 of the Act was not applicable because Consolidated was not acting as a buyer in the ordinary course of business but, instead, was acting as a creditor. Claiming that section 1631(c)(1) of the Act does not sufficiently define a buyer in the ordinary course of business, the Bank cites the UCC definition of buyer in the ordinary course of business. Specifically, the Bank relies on the last sentence of section 1–201(b)(9) of the UCC, which excludes "a person that acquires goods in a transfer in bulk or as security for or in total or partial satisfaction of a money debt." 810 ILCS 5/1–201(b)(9) (West 2008).

¶ 36        Setting aside the merits of the Bank's creditor argument–which we will address momentarily–we agree with Consolidated that by its plain language and clearly stated purpose, section 1631 of the Act preempts any provision of federal, state, or local law that conflicts with the enhanced protections afforded purchasers of farm products as expressed therein.

¶ 37        Although we previously stated that the General Assembly approved the codification of section 1631(e) of the Act by adding section 9–320(f) to the UCC, that section of the UCC was not a verbatim transcription of the Act. Indeed, in addition to (1) the name and address of the secured party; (2) the name and address of the debtor; (3) the appropriate identification number; and (4) a description of the farm products at issue, which includes the amount of farm products, if applicable, the crop year, and county where the farm products are produced or located, section 9–320(f)(1)(A)(ii) requires that a secured party's notice also include a "reasonable description of the property." As such, section 9–320(f) of the UCC places an added burden on the notice requirement that a secured party must present to a buyer of farm products to protect its secured interest. More important, this added provision, even though it applies to the secured party, is the type of conflict that the plain language of section 1631 seeks to preempt. Thus, we agree with Consolidated that section 1631 of the Act preempts the pertinent portions of the UCC that conflicted with the expressed purpose of the Act.

¶ 38        In so concluding, we decline to reach the merits of the Bank's contentions that the trial court erred by (1) finding that the Bank had not perfected its security interest as required by section 9–310(a) of the UCC; (2) finding that Consolidated was a buyer in the ordinary

course of business as defined by section 1–201(b)(9) of the UCC; (3) failing to recognize the Bank's prior lien status over Consolidated in contravention of section 9–322(a)(2) of the UCC; and (4) finding that the Bank failed to comply with the notice requirements of section 9–320(f), because those contentions are based on claims rooted in various sections of the UCC, which (1) in the case of the Bank's perfection claim, is not relevant or (2) in the case of the Bank's remaining claims, conflicts with the protections afforded purchasers of farm products under section 1631 of the Act.

¶ 39 Instead, having concluded that section 1631 of the Act preempts conflicts with the UCC, we will address only the Bank's contention that section 1631 of the Act does not apply because Consolidated was acting as a creditor instead of a buyer of farm products in the ordinary course of business.

¶ 40                                    B. The Bank's Claim That Consolidated
                                              Was Acting as a Creditor

¶ 41 We first note that at the July 2010 hearing on the parties' respective summary-judgment motions, the Bank conceded that it had not complied with section 1631 of the Act in that it failed to identify the counties in which the farm products–that were subject to its perfected security interest–were produced or located. In addition, in its brief to this court, the Bank agreed that "Consolidated is a grain elevator, and grain elevators do buy and sell grain in the usual course of business."

¶ 42 However, the Bank claims that despite its concessions, section 1631 of the Act does not preempt the UCC because Consolidated was not a buyer in the ordinary course of business but, instead, was a creditor by virtue of the fact that it contractually offset $45,266 as a result of the cancellation of the 2005 and 2006 grain contracts. In support of its claim that Consolidated was not a buyer in the ordinary course of business as defined by section 1631(c)(1) of the Act, but, instead, a creditor that negated the applicability of section 1631 of the Act, the Bank relies on *Royal Heights*, a case from the Supreme Court of Washington. However, the Bank's reliance is misplaced.

¶ 43 In *Royal Heights*, 871 P.2d at 592, the issue before the Washington Supreme Court concerned whether section 1631 of the Act permits "a commission merchant, who also acts as a secured lender, [to] take its security interest free of a prior perfected security interest in the same collateral." The commission merchant argued that under section 1631 of the Act, "a commission merchant can never be subject to a prior security interest even when acting as a lender." *Royal Heights*, 871 P.2d at 596. In concluding that section 1631 of the Act was not applicable, the court stated, in pertinent part, the following:

> "[A] commission merchant who lends money to the farmer, and takes a security interest in the farm product, and who seeks to retain the net proceeds from the sale of the farm product in repayment of that loan, is not protected by the *** Act *** and the commission merchant must look to state law to determine the priority of the security interests in the collateral." *Royal Heights*, 871 P.2d at 597.

¶ 44 The court held that although section 1631 of the Act protects commission merchants when they are acting in that capacity from the potential for double liability, the Act does not

"allow such merchants to become secured lenders and take farm products as collateral free of all preexisting perfected security interests." *Royal Heights*, 871 P.2d at 597.

¶ 45    In this case, the record does not show–and the Bank does not claim–that Consolidated (1) provided the Beiermanns a loan, (2) acquired a secured interest in the Beiermanns' farm products, or (3) sought to retain the proceeds of the sale of the farm products to satisfy a secured or perfected security interest. Thus, *Royal Heights* does not offer the Bank any support.

¶ 46    By its plain terms, the enhanced protections provided under section 1631 of the Act apply strictly to a person who, in his sole capacity as a buyer of farm products in the ordinary course of his business, as defined by section 1631(c)(1) of the Act, does not receive proper notice as required by section 1631(e) of the Act. In this regard, the Bank concedes that Consolidated has met this strict criterion. However, the Bank attempts to also classify Consolidated as a creditor by dissecting the method and manner in which Consolidated, as a purchaser of farm product in the ordinary course of business, (1) chooses to financially accommodate a purveyor of farm products and (2) disburses the proceeds from the sale of the farm products. Such a cumbersome and detailed inspection of the financial agreements between buyers and producers of farm products is not required by the Act and would only serve to undermine its stated purpose, which is to avoid impediments to interstate commerce.

¶ 47    Accordingly, we reject the Bank's argument that section 1631 of the Act was not applicable because Consolidated was acting as a creditor instead of a buyer in the ordinary course of business. Given the Bank's concession that it did not comply with the notice requirements of section 1631 of the Act, we further reject the Bank's argument that the trial court erred by (1) denying its summary-judgment motion and (2) granting summary judgment in Consolidated's favor.

¶ 48            C. The Trial Court's Denial of the Bank's Motion
                    for Leave To File an Amended Count I

¶ 49    The Bank also argues that the trial court erred by denying its motion for leave to file an amended count I. We disagree.

¶ 50    Section 2–1005(g) of the Civil Code (735 ILCS 5/2–1005(g) (West 2008)) provides that "after the entry of a summary judgment, the court shall permit pleadings to be amended upon just or reasonable terms." If the amendment will " 'further the ends of justice,' " the trial court is required to permit the party to make the amendment. *Country Mutual Insurance Co. v. D&M Tile, Inc.*, 394 Ill. App. 3d 729, 737, 916 N.E.2d 606, 612 (2009). In determining whether the trial court abused its discretion in denying a motion to amend, a reviewing court must look at the following four factors: (1) whether the proposed amendment would cure the defective pleading, (2) whether other parties would sustain prejudice or surprise by virtue of the proposed amendment, (3) whether the proposed amendment is timely, and (4) whether previous opportunities to amend the pleading could be identified.

¶ 51    In this case, the Bank sought to amend its complaint by adding two paragraphs that stated (1) in July 2008, the Bank sent Consolidated a "Notice of Security Interest" by certified mail and (2) at all relevant times, Consolidated was aware of the Bank's secured interest. These

proposed amendments, however, would not have cured the Bank's deficient notice in that it did not state that the Bank had taken the adequate measures to describe the farm products at issue to include their location by county as required by section 1631 of the Act. Therefore, the proposed amendments would not have rendered summary judgment inappropriate in this case. Accordingly, we conclude that the court did not abuse its discretion by denying defendants' motion for leave to file an amended count I.

¶ 52         III. CONCLUSION

¶ 53   For the reasons stated, we affirm the trial court's judgment.

¶ 54   Affirmed.