# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 03-3191

_____

Farm Credit Midsouth, PCA, formerly     *
known as Eastern Arkansas Production   *
Credit Association,     *
    *
        Appellant,     *
    *   Appeal from the United States
    v.     *   District Court for the
    *   Eastern District of Arkansas.
Farm Fresh Catfish Company,     *
    *
        Appellee.     *

_____

Submitted: April 16, 2004
Filed: June 14, 2004

_____

Before WOLLMAN, McMILLIAN, and RILEY, Circuit Judges.

_____

RILEY, Circuit Judge.

Farm Credit Midsouth, PCA (Farm Credit) sued Farm Fresh Catfish Company (Farm Fresh) alleging Farm Fresh had converted Farm Credit's perfected security interest in catfish purchased by Farm Fresh. On summary judgment, the district court[1] concluded Farm Fresh did not convert Farm Credit's security interest, because Farm Credit failed to comply with the direct notice exception of the Food Security Act of

_____

[1]The Honorable William R. Wilson, Jr., United States District Judge for the Eastern District of Arkansas.

1985 (Act). 7 U.S.C. § 1631(e)(1) (2000); see Pub. L. No. 99-198, 99 Stat. 1354 (1985) (codified throughout Title 7 of the United States Code, and referred to as the Food Security Act of 1985). Farm Credit appeals. We affirm.

## I. BACKGROUND

Farm Credit financed Reece Contracting, Inc.'s (Reece) purchase and operation of an Arkansas catfish farm. To secure the financing, Reece granted Farm Credit a first priority security interest in Reece's catfish and catfish fingerlings. Farm Credit filed a financing statement with the Arkansas Secretary of State and the counties in which Reece raised catfish.

On July 2, 1998, Farm Credit sent Farm Fresh a letter informing Farm Fresh that Farm Credit was financing Reece's production costs, and Farm Credit had a first priority lien in all of Reece's catfish. On March 30, 2000, Farm Credit again sent Farm Fresh a letter containing the same information as the July 1998 letter.

Farm Fresh regularly purchased catfish from Reece. After Reece defaulted on its obligations, Farm Credit discovered Farm Fresh had allegedly not honored its payment obligations under the Act for forty-four payments to Reece, totaling $692,081.71. Although Farm Fresh usually paid with checks payable to Reece and Farm Credit, on these forty-four catfish purchases, the Farm Fresh checks listed only Reece as payee. Farm Credit sued Farm Fresh, contending Farm Fresh converted Farm Credit's security interest.

On cross motions for summary judgment, the district court granted judgment in Farm Fresh's favor, concluding Farm Credit and its letters did not strictly comply with the Act's direct notice exception. Farm Credit appeals, contending it need only substantially comply with the Act's direct notice exception, and its letters to Farm Fresh substantially complied with the direct notice exception.

## II.    DISCUSSION

"We review the district court's grant of summary judgment de novo." Interstate Cleaning Corp. v. Commercial Underwriters Ins. Co., 325 F.3d 1024, 1027 (8th Cir. 2003). "We will affirm a district court's grant of summary judgment 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits . . . ' demonstrate that no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law." Id. (quoting Fed. R. Civ. P. 56(c)).

We review a district court's interpretation of a statute de novo. Jessep v. Jacobson Transp. Co., 350 F.3d 739, 741-42 (8th Cir. 2003). "In analyzing a statute, we begin by examining the text, not by 'psychoanalyzing those who enacted it.'" Carter v. United States, 530 U.S. 255, 271 (2000) (quoting Bank One Chicago, N.A. v. Midwest Bank & Trust Co., 516 U.S. 264, 279 (1996) (internal citation omitted)). We "assum[e] that the ordinary meaning of [a statute's] language accurately expresses the legislative purpose." Engine Mfrs. Ass'n v. South Coast Air Quality Mgmt. Dist., __ U.S. __, 124 S. Ct. 1756, 1761 (2004) (citation omitted).

Congress adopted the Act to protect farm products purchasers from double payment.[2] See 7 U.S.C. § 1631(a)-(b). The Act provides:

> Except as provided in subsection (e) . . . , a buyer who in the ordinary course of business buys a farm product from a seller engaged in farming operations shall take free of a security interest created by the seller, even though the security interest is perfected; and the buyer knows of the existence of such interest.

---

[2]Since Farm Credit sent its March 2000 letter, Congress has amended the Act. See Farm Security and Rural Investment Act of 2002, Pub. L. No. 107-171, § 10604, 116 Stat. 134, 512 (2002). The amendment does not affect the outcome of this appeal.

Id. § 1631(d).  According to the Act's plain meaning, subsection (d) provides that a farm products purchaser, unless the secured creditor complies with subsection (e), buys farm goods free of a secured creditor's security interest, even if the purchaser knows of the security interest.

Subsection (e) declares a farm products purchaser "takes subject to a security interest created by the seller *if*" (1) the secured creditor provided, within a year before the sale, the farm products purchaser with direct written notice of the secured creditor's interest (direct notice exception), id. § 1631(e)(1)(A); or (2) the secured creditor filed an effective financing statement covering the farm products if the state has established a central filing system that complies with the Act (central filing exception), id. § 1631(e)(2).  Congress's use of "if" emphasizes the farm products purchaser takes the farm goods subject to the security interest *only* when the secured creditor complies with the direct notice exception or the central filing exception.

Farm Fresh and Farm Credit agree Arkansas law applies, and Arkansas has not established a central filing system that complies with the Act.  Although only the Act's direct notice exception is applicable, a comparison of the two subsection (e) exceptions is instructive for our analysis.

To comply with the direct notice exception, a secured creditor must send the farm products purchaser a written notice listing (1) the secured creditor's name and address, (2) the debtor's name and address, (3) the debtor's social security number or taxpayer identification number, (4) a description of the farm products covered by the security interest and a description of the property, and (5) any payment obligations conditioning the release of the security interest.  Id. § 1631(e)(1)(A)(ii)(I)-(IV) & § 1631(e)(1)(A)(v).  The description of the farm products must include the amount of the farm products subject to the security interest, the crop year, and the counties in which the farm products are located or produced.  Id. § 1631(e)(1)(A)(ii)(IV).

-4-

To comply with the central filing exception, the secured creditor must file a financing statement containing the same information as required in the written notice, except the secured creditor need not include crop year or payment obligation information. Compare id. § 1631(c)(4)(D)(i)-(iv) with id. § 1631(e)(1)(A)(ii)(I)-(IV) and § 1631(e)(1)(A)(v). Notwithstanding errors contained in the financing statement, a financing statement in a central filing state remains effective so long as the errors "are not seriously misleading." Id. § 1631(c)(4)(I).

Unlike the Act's definition of an effective financing statement in a central filing state, the Act's direct notice exception does not contain language indicating the required contents of the written notice are merely permissive or can be satisfied through substantial compliance (i.e., "are not seriously misleading"). By including substantial compliance language in defining an effective financing statement for the central filing exception and excluding such language from the direct notice exception, Congress presumptively and logically intended that a secured creditor must strictly comply with the direct notice exception. See Lutheran Soc. Serv. of Minn. v. United States, 758 F.2d 1283, 1289 (8th Cir. 1985) (noting "[w]here Congress includes particular language in one section of a statute but omits it in another section of the same [statute], it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion") (alterations in original; citation omitted). Congress probably has its reasons for the disparate treatment, such as the desire to encourage central filings and a goal to simplify the interstate and foreign agricultural markets for farm products purchasers, and, ultimately, the farmer and the consumer. Congress is the appropriate forum to consider and, if it wishes, to legislate substantial compliance language in the Act's direct notice exception. Cf. GMAC Commercial Credit LLC v. Dillard Dep't Stores, Inc., 357 F.3d 827, 829 (8th Cir. 2004) (noting, while many similarities exist between a limited liability company and a corporation, Congress is the appropriate forum to apply the same citizenship rule for limited liability companies as for corporations).[3]

---

[3]We reject the Kansas Supreme Court's application of a substantial compliance factor to the Act's direct notice exception. See First Nat'l Bank & Trust v. Miami

Forcing secured creditors to comply strictly with the direct notice exception does not run afoul of the Act's purpose. Congress adopted the Act to protect farm products purchasers from double payment. 7 U.S.C. § 1631(a)-(b). Requiring a secured creditor to comply strictly with the Act's direct notice provision removes ambiguity regarding compliance, and protects farm products purchasers from double payment. Extending substantial compliance to the direct notice exception would have the opposite effect, requiring a farm products purchaser to guess whether the written notice substantially complied with the Act's direct notice exception. If the purchaser guesses wrong, the purchaser is exposed to double payment. Conversely, a farm products purchaser may easily verify if the secured creditor strictly complied with the Act's direct notice exception.

Farm Credit's July 2, 1998 and March 30, 2000 letters do not comply strictly with the Act's direct notice exception. Neither letter contains Reece's taxpayer identification number, Reece's address, or the counties in which the catfish subject to Farm Credit's security interest are produced or located. Because the July 1998 and March 2000 letters fail to comply with the Act's direct notice exception, Farm Fresh purchased the catfish free of Farm Credit's security interest, even though Farm Fresh knew of the existence of such interest. See 7 U.S.C. § 1631(d).

## III.  CONCLUSION

For the foregoing reasons, we affirm the district court's well-analyzed order granting summary judgment to Farm Fresh.

_____

County Coop. Assoc., 897 P.2d 144, 152 (Kan. 1995). We consider the decision unpersuasive and contrary to established rules of statutory interpretation.