# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

**State Bank of Cherry v. CGB Enterprises, Inc.**, 2012 IL App (3d) 100495

---

| | |
|---|---|
| Appellate Court Caption | STATE BANK OF CHERRY, an Illinois Banking Corporation, Plaintiff-Appellee, v. CGB ENTERPRISES, INC., Defendant-Appellant. |
| District & No. | Third District<br>Docket No. 3-10-0495 |
| Filed | January 4, 2012 |
| Held<br><br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | The trial court properly entered summary judgment for defendant in plaintiff bank's action alleging that defendant failed to protect plaintiff's security interest in the crops defendant purchased from a producer, notwithstanding the fact that the bank gave defendant notices of its security interest pursuant to section 1631 of the Federal Food Security Act by providing documents titled "Notice of Security Interest," since the notices required by section 1631 must strictly comply with the statute and the notices failed to comply with the requirement that the county where the crops were located be named, and therefore, defendant purchased the crops free of defendant's security interest as a matter of law. |
| Decision Under Review | Appeal from the Circuit Court of La Salle County, No. 08-L-29; the Hon. Joseph P. Hettel, Judge, presiding. |
| Judgment | Reversed. |

Counsel on
Appeal

Jeffrey Alan Ryva (argued), of Husch Blackwell LLP, of Peoria, for appellant.

Bradley P. Popurella (argued), of Anthony C. Raccuglia & Associates, of Peru, and Robert B. Steele, of Aplington, Kaufman, McClintock, Steele & Barry, of La Salle, for appellee.

Panel

JUSTICE McDADE delivered the judgment of the court, with opinion.
Justice Lytton concurred in the judgment and opinion.
Justice Holdridge dissented, with opinion.

## OPINION

¶ 1    Plaintiff, the State Bank of Cherry, an Illinois banking corporation, filed a complaint against defendant, CGB Enterprises, Inc., to recover for failing to protect plaintiff's security interest in crops defendant purchased from Lawrence Rogowski. Defendant filed a motion to dismiss plaintiff's complaint on the grounds plaintiff's notices failed to strictly comply with section 1631(e) of the Food Security Act of 1985 (7 U.S.C. § 1631(e) (2006)). Plaintiff filed a motion for summary judgment and defendant filed a cross-motion for judgment on the pleadings. The motions agreed that the dispositive question was whether section 1631(e) required strict compliance or substantial compliance. The circuit court of La Salle County entered a judgment granting plaintiff's motion for summary judgment and denying defendant's motion for judgment on the pleadings. For the reasons that follow, we reverse.

¶ 2                                  BACKGROUND

¶ 3    Rogowski is not a party to these proceedings. Rogowski executed a note in plaintiff's favor using the crops as security. Rogowski later sold those crops to defendant. Plaintiff's complaint alleges that it gave defendant notice of its security interest in the crops, pursuant to section 1631(e) of the Food Security Act of 1985 (Food Security Act or Act) (7 U.S.C. § 1631(e) (2006)), by providing defendant documents titled "Notice of Security Interest." Section 1631(e) reads, in pertinent part, as follows:

"Purchases subject to security interest. A buyer of farm products takes subject to a security interest created by the seller if–

(1) (A) within 1 year before the sale of the farm products, the buyer has received from the secured party or the seller written notice of the security interest organized according to farm products that–

* * *

-2-

(ii) contains,

*  *  *

(IV) a description of the farm products subject to the security interest created by the debtor, including *** the name of each county or parish in which the farm products are produced or located[.]" 7 U.S.C. § 1631(e) (2006).

¶ 4    Plaintiff's complaint alleges that defendant failed to protect plaintiff's security interest by making payment on the crops directly to Rogowski without naming plaintiff on the check in one crop year, and by permitting Rogowski to negotiate a check for the crops without plaintiff's endorsement through defendant's bank in the following crop year. Defendant filed a motion to dismiss, relying on *Farm Credit Midsouth, PCA v. Farm Fresh Catfish Co.*, 371 F.3d 450 (8th Cir. 2004), which held that strict compliance with the section 1631(e) notice provision is required for a party to recover for failing to protect a security interest in crops. See *Farm Fresh Catfish Co.*, 371 F.3d at 453. The *Farm Fresh Catfish* court held that "the Act[ ] *** does not contain language indicating the required contents of the written notice are merely permissive or can be satisfied through substantial compliance." *Farm Fresh Catfish*, 371 F.3d at 453.

¶ 5    The notices at issue in the instant case both contain the following language: "The farm products described above are or may be located on (describe property and county or parish where farm products are or may be located)  ***." Each form then provides a blank space for the information, but on both forms, the information was never filled in. Neither notice names the county where the farm products are or may be located. Below the blank space on both forms is a check box that is marked with an "X." Next to the check box, the notices read: "The security interest also covers the described farm products wherever located and is not limited to those located on the above property." The notices also state that any check issued to the debtor must be (1) made payable both to the debtor (in this case Rogowski) and to the secured party (in this case plaintiff); (2) delivered to or received by the secured party; and (3) paid.

¶ 6    Plaintiff's response to defendant's motion to dismiss argued that its notices are sufficient under sections 9-320(f) and 9-320.1 of the Uniform Commercial Code (UCC) (810 ILCS 5/9-320(f), 9-320.1 (West 2006)), as interpreted in the Fourth District's decision in *First National Bank v. Effingham-Clay Service Co.*, 261 Ill. App. 3d 890 (1994). Section 9-320(f) is essentially identical to section 1631(e). The *First National Bank* court held that substantial compliance with the notice requirement is all that is necessary to provide effective notice of a security interest in crops. See *First National Bank*, 261 Ill. App. 3d at 893 ("Effingham-Clay Service was given adequate notice of an obligation to protect the Bank's security interest").

¶ 7    The defendant in *First National Bank* argued that "the notice it received from the Bank was insufficient because it did not set forth the 'county' where the crops were grown *** as required by section 9-307.1(a)(ii)(IV) of the Uniform Commercial Code–Secured Transactions (Code) (810 ILCS 5/9-307.1(a)(ii)(IV) (West 1992))." *First National Bank*, 261 Ill. App. 3d at 891. The *First National Bank* court held that "the notice received was

adequate to place Effingham-Clay Service on notice of the Bank's security agreement on grain delivered by Jerry Sherwood." *First National Bank*, 261 Ill. App. 3d at 893.

¶ 8 The *First National Bank* court, and the trial court below, never cited section 1631 or the Act. The trial court in this case held that it was bound to follow *First National Bank* rather than the Eighth Circuit decision. Based on the *First National Bank* court's decision, the trial court denied defendant's motion to dismiss. The court denied defendant's motion to reconsider. Defendant answered plaintiff's complaint and raised an affirmative defense that plaintiff was not entitled to recover because its notice did not strictly comply with section 1631(e).

¶ 9 The circuit court of La Salle County entered a judgment granting plaintiff's motion for summary judgment and denying defendant's motion for judgment on the pleadings. This appeal followed.

¶ 10 ANALYSIS

¶ 11 The parties disagree as to whether the Food Security Act or the UCC governs this case and, therefore, whether *Farm Fresh Catfish* or *First National Bank* controls our disposition. Plaintiff argues that because the Eighth Circuit decision is not binding on this court, we should follow "current Illinois law" as reflected in *First National Bank* and apply a substantial compliance test. Plaintiff argues that under *First National Bank*, Illinois is a substantial compliance state. Plaintiff argues that this case is factually identical to *First National Bank*, that its decision is the only Illinois decision to address the question of whether substantial or strict compliance with either the federal or state notice provision is required, and that, therefore, *First National Bank* was binding on the trial court and should be binding on this court.

¶ 12 We find that the Food Security Act governs plaintiff's notice of its security interest in the farm products at issue, but that neither *Farm Fresh Catfish* nor *First National Bank* is controlling on this court. The Food Security Act states:

"Congress finds that–

(1) certain State laws permit a secured lender to enforce liens against a purchaser of farm products even if the purchaser does not know that the sale of the products violates the lender's security interest in the products, lacks any practical method for discovering the existence of the security interest, and has no reasonable means to ensure that the seller uses the sales proceeds to repay the lender;

* * *

(4) this exposure constitutes a burden on and an obstruction to interstate commerce in farm products.

(b) Declaration of purpose.

The purpose of this section is to remove such burden on and obstruction to interstate commerce in farm products." 7 U.S.C. § 1631.

¶ 13 Our court recognizes:

"The key inquiry in all preemption cases is the objective or purpose of Congress in

enacting the particular statute. The doctrine requires courts to examine the Federal statute in question to determine whether Congress intended it to supplant State laws on the same subject." *Kellerman v. MCI Telecommunications Corp.*, 112 Ill. 2d 428, 438 (1986).

The stated purpose of the Food Security Act was to "remove [the] burden on and obstruction to interstate commerce" occasioned by "certain State laws." Thus the clear purpose of the Food Security Act is to supplant state law on the same subject.

¶ 14     Further, the federal statute controls under the express terms of the state statute and under the supremacy clause of the United States Constitution. First, section 9-109 of the Uniform Commercial Code reads, in pertinent part, as follows:

"This Article does not apply to the extent that:

    (1) a statute, regulation, or treaty of the United States preempts this Article[.]" 810 ILCS 5/9-109 (West 2006).

Second, this court has recognized:

"The supremacy clause of the United States Constitution provides that '*** the Laws of the United States *** shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding.' U.S. Const., art. VI, cl. 2. ' "State law is preempted under the supremacy clause in three circumstances: (1) when the express language of a federal statute indicates an intent to preempt state law; ***." ' [Citation.]" *Better Government Ass'n v. Blagojevich*, 386 Ill. App. 3d 808, 813 (2008).

¶ 15     Here, the Food Security Act states:

"Except as provided in subsection (e) of this section *and notwithstanding any other provision of Federal, State, or local law*, a buyer who in the ordinary course of business buys a farm product from a seller engaged in farming operations shall take free of a security interest created by the seller, even though the security interest is perfected; and the buyer knows of the existence of such interest." (Emphasis added.) 7 U.S.C. § 1631 (2006).

¶ 16     Section 1631(d) is a clear expression of an intent to preempt state law. Accordingly, under both the supremacy clause and section 9-109 of the UCC, the federal statute controls. Moreover, the notice of security interest on which plaintiff based its complaint clearly states that it purported to "give[ ] notice pursuant to the Food Security Act of 1985." The filings in this case were expressly made pursuant to the federal statute, and the federal statute should control.

¶ 17     Because the Food Security Act controls, and because plaintiff's complaint did not invoke the UCC, *First National Bank* is inapplicable. Regardless, that decision is not binding on this court. *Stein v. Krislov*, 405 Ill. App. 3d 538, 542 (2010) ("we are not required to follow decisions of other districts").

¶ 18     The next question we face is whether we *are* bound by the federal court's interpretation of the Act. For the reasons that follow, we are not *bound* by the Eighth Circuit's interpretation of section 1631(e), but find it to be the better-reasoned decision, and highly persuasive.

¶ 19    Our supreme court has reasserted the practice in Illinois that " '[i]n construing ***
Federal statutes, we *** look to the Federal decisions for [their] interpretation.' [Citation.]"
*U.S. Bank National Ass'n v. Clark*, 216 Ill. 2d 334, 352 (2005). The supreme court has
clarified Illinois's position on the binding effect of federal court decisions interpreting a
federal statute as follows:

> "[W]e reject plaintiff's claim that we are bound by federal court decisions on this issue.
> While in *Wilson v. Norfolk & Western Ry. Co.*, 187 Ill. 2d 369, 383 (1999), this court
> stated 'federal decisions are considered controlling on Illinois state courts interpreting
> a federal statute' because federal statutes must be given uniform application, six months
> later, in *Weiland v. Telectronics Pacing Systems, Inc.*, 188 Ill. 2d 415, 423 (1999), this
> court held that it need not follow Seventh Circuit precedent for three reasons–the United
> States Supreme Court had not ruled on the issue, there was a split of authority among the
> federal circuit courts of appeals, and this court believed that the Seventh Circuit case was
> wrongly decided. Later, in *Sprietsma v. Mercury Marine*, 191 Ill. 2d 112 (2011), *reversed
> on other grounds*, 537 U.S. 51 *** (2002), this court attempted to reconcile the *Wilson*
> and *Weiland* decisions, stating:
>
>> '[A]s we have repeatedly recognized, uniformity of decision is an important
>> consideration when state courts interpret federal statutes. [Citations.] *** In the
>> absence of a decision of the United States Supreme Court, which would definitively
>> answer the question presented by this case, we elect to give considerable weight to
>> the decisions of federal courts of appeals and federal district courts that have
>> addressed this issue.' *Sprietsma*, 197 Ill. 2d at 120.
>
> Accordingly, while a decision of the United States Supreme Court is binding on this
> court, federal circuit and district court decisions were recognized in *Sprietsma* as merely
> being persuasive. [Citation.]" *Bowman v. American River Transportation Co.*, 217 Ill.
> 2d 75, 91 (2005).

¶ 20    The United States Supreme Court has not ruled on the issue of whether section 1631(e)
requires strict or substantial compliance, plaintiff has not provided persuasive grounds to find
that *Farm Fresh Catfish* is itself wrongly decided, and there is no split of authority among
the federal circuit courts of appeal on the issue. In fact, *Peoples Bank v. Bryan Brothers
Cattle Co.*, 504 F.3d 549, 555 (5th Cir. 2007), supports finding that the federal circuit courts
of appeal uniformly believe that the Food Security Act requires strict compliance.

¶ 21    In *Bryan Brothers Cattle Co.*, the Fifth Circuit Court of Appeals noted that "[u]nder the
[Food Security Act], an effective financing statement must contain, *inter alia*, the name of
the person indebted to the secured party." *Id.* at 555. The court stated that "[a] financing
statement that provides only the debtor's trade name does not sufficiently provide the name
of the debtor." (Internal quotation marks omitted.) *Id.* at 556. Although the *Bryan Brothers
Cattle Co.* court did apply a substantial compliance test, it did so only "[i]n the absence of
*** case law" on the issue, turning instead to Mississippi law, which also required a
financing statement to provide the name of the debtor. *Id.* at 555. But unlike the Illinois law
parallel to the federal statute involved in this case, the parallel Mississippi law in *Bryan
Brothers Cattle Co.* expressly provided for substantial, rather than strict compliance. *Bryan*

*Brothers Cattle Co.*, 504 F.3d at 556 ("the Mississippi Code state[d] that a financing statement that provides the name of the debtor is not rendered ineffective by the absence of the debtor's trade name").

¶ 22　　In this case, the Illinois law and the Food Security Act both expressly require the notice of security interest to contain "(d) a description of the farm products subject to the security interest created by the debtor, including *** county." 810 ILCS 5/9-320(f)(1)(A)(ii)(d) (West 2006); 7 U.S.C. § 1631(e)(1)(A)(ii)(IV) (requiring "a description of the farm products subject to the security interest created by the debtor, including *** the name of each county or parish in which the farm products are produced or located"). Plaintiff asserts that it is not likely that the Illinois supreme court would adopt *Farm Fresh Catfish*'s strict compliance test, favoring instead the Kansas Supreme Court's adoption of a substantial compliance test.

¶ 23　　The *Farm Fresh Catfish* court stated that it "reject[ed] the Kansas Supreme Court's application of a substantial compliance factor to the Act's direct notice exception. [Citation.] We consider the decision unpersuasive and contrary to established rules of statutory interpretation." *Farm Fresh Catfish*, 371 F.3d at 454 n.3. The plain language of the Food Security Act allows for minor errors in notices given under a central filing system, but contains no such exception for minor errors in direct notices. *Farm Fresh Catfish*, 371 F.3d at 453 ("Unlike the Act's definition of an effective financing statement in a central filing state, the Act's direct notice exception does not contain language indicating the required contents of the written notice are merely permissive or can be satisfied through substantial compliance ***."). The *Farm Fresh Catfish* court held that those distinctions were intentional and logical.

> "By including substantial compliance language in defining an effective financing statement for the central filing exception and excluding such language from the direct notice exception, Congress presumptively and logically intended that a secured creditor must strictly comply with the direct notice exception. [Citation.] Congress probably has its reasons for the disparate treatment, such as the desire to encourage central filings and a goal to simplify the interstate and foreign agricultural markets for farm products purchasers, and, ultimately, the farmer and the consumer. Congress is the appropriate forum to consider and, if it wishes, to legislate substantial compliance language in the Act's direct notice exception." *Farm Fresh Catfish*, 371 F.3d at 453-54.

¶ 24　　Thus, while substantial compliance may be acceptable for a notice given under the central filing system notice exception, the Congress intended strict compliance with the Act for a notice given under the direct notice exception. Perhaps the Food Security Act, in giving that distinction a true difference, raises form over function, but it was the province of the Congress to do so. *Farm Fresh Catfish*, 371 F.3d at 453-54.

¶ 25　　We find that *Farm Fresh Catfish* was not wrongly decided. *Farm Fresh Catfish* provides the correct construction of the statute as written in accordance with well-established rules of statutory construction. *Farm Fresh Catfish*, 371 F.3d at 452 (" 'In analyzing a statute, we begin by examining the text, not by "psychoanalyzing those who enacted it." [Citation.]' We 'assum[e] that the ordinary meaning of [a statute's] language accurately expresses the legislative purpose.' [Citation.]"). The *Farm Fresh Catfish* court found that the letters in that

case did not strictly comply with the Act's direct notice exception because neither letter contained, *inter alia*, the counties in which the catfish subject to Farm Credit's security interest were produced or located. *Farm Fresh Catfish*, 371 F.3d at 454. The court held that because the letters failed to comply with the Act's direct notice exception, Farm Fresh purchased the catfish free of Farm Credit's security interest, even though Farm Fresh knew of the existence of the interest. *Id.*

¶ 26    The court's interpretation of the statute is not contradicted in the federal circuit courts of appeal. Rather, its holding is actually supported by a decision from another circuit. See *Bryan Brothers Cattle Co.*, 504 F.3d at 556. Therefore, under *Bowman*, *Farm Fresh Catfish* is persuasive authority and should be accorded considerable weight. *Bowman*, 217 Ill. 2d at 91 (citing *Sprietsma*, 197 Ill. 2d at 120). Under the Eighth Circuit's construction of the statute, strict compliance is required. Plaintiff's notice to defendant had to list the county in which the farm products were or may be located to give effective notice to defendant of its security interest in the crops.

¶ 27    Plaintiff argues that *Farm Fresh Catfish* is distinguishable and, in this case, substantial compliance is adequate, because defendant is a grain elevator, and Rogowski delivered the farm product (grain) covered by the security interest, to defendant for resale. Thus in this case it is irrelevant where and on what land the farm product was grown, since the product was delivered to the purchaser with notice of the lien.

¶ 28    We must reject plaintiff's arguments in support of applying a substantial compliance test *in this case*, and uniformly apply the strict compliance test to plaintiff's notices. The *First National Bank* court based its decision on an exception that does not exist. The court wrote that "[w]hile the technicality of description is critical when dealing with other creditors, we agree with the trial court that Effingham-Clay Service was given adequate notice of an obligation to protect the Bank's security interest." *First National Bank*, 261 Ill. App. 3d at 893. We adhere to the rule that "a statute must be enforced as written, and a court may not depart from the statute's plain language by reading into it exceptions, limitations, or conditions not expressed by the legislature." *Gonzalez v. Profile Sanding Equipment, Inc.*, 333 Ill. App. 3d 680, 693 (2002). We also note that inserting an exception such that only substantial compliance with direct notice provisions is enough to satisfy the Act further opens the door to the very problem that Congress was trying to avoid of some purchasers being unaware of a secured lender's interest in farm products.

¶ 29    Applying the statute in this case, we are bound by the fact that no exception for crops actually delivered to the purchaser appears in the statute. Nor does the statute make provision for constructive or actual notice when the formal direct notice does not comply with the statute's requirements for direct notice. Plaintiff's notices failed to comply with section 1631(e) of the Food Security Act. Therefore, under section 1631(d), defendant took free of the security interest created by the seller, even though defendant knew of its existence. 7 U.S.C. § 1631(d) (2006).

¶ 30    Defendant purchased the products free of defendant's security interest as a matter of law. Plaintiff's complaint is premised entirely on defendant's alleged failure to protect plaintiff's security interest. Accordingly, the trial court's orders granting summary judgment in

plaintiff's favor and denying defendant's motion for judgment on the pleadings are reversed. See *First Midwest Bank, N.A. v. IBP, Inc.*, 314 Ill. App. 3d 255, 261 (2000) (affirming summary judgment in plaintiff's favor where plaintiff sought judgment against defendant for defendant's alleged failure to honor plaintiff's security interest in farm products but court determined that notice of security interest had expired under the UCC).

¶ 31                                                  CONCLUSION

¶ 32      The judgment of the circuit court of La Salle County is reversed.

¶ 33      Reversed.

¶ 34      JUSTICE HOLDRIDGE, dissenting:

¶ 35      I respectfully dissent. While I agree with the majority's conclusion that we are not *bound* by the holding in *Farm Credit Midsouth, PCA v. Farm Fresh Catfish Co.*, 371 F.3d 450 (8th Cir. 2004), I disagree with its conclusion that the Eighth Circuit's holding in that case is "highly persuasive." At issue is whether State Bank of Cherry (State Bank) gave adequate notice of its security interest in crops sold by Rogowski to CGB Enterprises, Inc. (CGB), when it served on CGB a notice of security interest covering "all grain on hand [and] all growing crops" of farm products from Rogowski. There is no dispute over the form or substance of the notice that State Bank provided to CGB, and CGB's only claim is that the failure of the notice to indicate the county in which the crops were produced or located prior to CGB taking possession of those crops rendered the notice ineffective as a matter of law. There is also no dispute over whether section 1631 of the Food Security Act of 1985 (Act) (7 U.S.C. § 1631 (2006)) applies to the instant transaction. The only issue is whether strict or substantial compliance with the Act is necessary to protect State Bank's interest in the crops that Rogowski sold to CGB.[1]

¶ 36      Section 1631(e) of the Act (7 U.S.C. § 1631(e) (2006)) provides that a buyer of farm products takes those products subject to a security interest created by the seller if the buyer has received from the secured party written notice of the security interest that includes, *inter alia*, "the name of each county or parish in which the farm products are produced or located." 7 U.S.C. § 1631(e) (2006). As the majority has noted, the Eighth Circuit has held that strict compliance with section 1631(e) is required and, more specifically, failure of the secured party to include the name of the county in which the farm products were produced or located allows the purchaser to take the products free of the security interest. *Farm Fresh Catfish*, 371 F.3d at 453. However, I would point out that the Eighth Circuit is the only court that has held that the Food Security Act requires strict compliance. Other courts have held that substantial compliance with the requirements of section 1631(e) is sufficient if the notice

_____

[1]The Fourth District recently decided *Cornerstone Bank & Trust, N.A. v. Consolidated Grain & Barge Co.*, 2011 IL App (4th) 100715, which did not address the issue of substantial versus strict compliance with section 1631. As such, it does not address the central issue of this matter.

given by the secured creditor reasonably placed the purchaser on notice of the claim. See *Peoples Bank v. Bryan Brothers Cattle Co.*, 504 F.3d 549, 555 (5th Cir. 2007); *First National Bank & Trust v. Miami County Cooperative Ass'n*, 897 P.2d 144 (Kan. 1995); *Farm Credit Services of Mid America, ACA v. Rudy, Inc.*, 680 N.E.2d 637, 642-43 (Ohio Ct. App. 1996); *Lisco State Bank v. McCombs Ranches, Inc.*, 752 F. Supp. 329 (D. Neb. 1990). I would also point out that *First National Bank & Trust*, which was rejected by the Eighth Circuit in *Farm Fresh Catfish*, is still cited as authority in support of the proposition that substantial compliance with section 1631(e) is sufficient to protect a secured interest in farm products. See *Via Christi Regional Medical Center Inc. v. Reed*, 247 P.3d 1064, 1069 (Kan. Ct. App. 2011).

¶ 37    As the majority points out, section 1631 of the Act allows two methods of providing notification of a security interest in farm products which are referred to as central filing and direct notification. The heart of the majority's argument in the instant matter, adopting the Eighth Circuit's rationale in *Farm Fresh Catfish*, is that the presence of substantial compliance language in the central filing provision and the lack of such language in the direct notification provision is unassailable proof that "Congress presumptively and logically intended that a secured creditor must strictly comply with the direct notice exception." *Farm Fresh Catfish*, 371 F.3d at 453. The fact that there was little logic to this presumption was not lost upon the Eighth Circuit, which noted that Congress "probably has its reasons" for this otherwise counterintuitive distinction. *Id.* at 453-54. The majority in the instant matter cites *Farm Fresh Catfish* for the proposition that it is the province of the legislature to raise form over substance. I disagree. I am aware of no rule of statutory construction which requires a reviewing court to conclude that the legislature must have intended an illogical result.

¶ 38    According to the rationale articulated by the Eighth Circuit in *Farm Fresh Catfish* and adopted herein by the majority, a notice filed with a central filing system, of which the buyer may only have constructive notice (*First National Bank & Trust*, 897 P.2d at 147), can contain errors in identification of the secured party, the debtor, or the farm products subject to the creditor's security interest, while the notice actually served upon the purchaser of the secured products cannot contain a single minor error, such as the omission of the name of the county in which those products were produced or located, even when there can be no question that the products in question come into the possession of the buyer prior to the sale.[2] There is no logical basis for concluding that Congress intended that a secured creditor could substantially comply with constructive notice provisions, but would have to strictly comply with actual notice provisions. *First National Bank & Trust*, 897 P.2d at 151-52.

¶ 39    There is also no presumptive basis for the majority's holding. The legislative purpose

---

[2]In the instant matter, Rogowski delivered the grain covered by State Bank's security interest to CGB (the operator of a grain elevator) for storage prior to the sale and after State Bank had served notice on CGB of its security interest in "all grain on hand" and "all growing crops" belonging to Rogowski "wherever located." There can be no question that CGB was on notice regarding the grain it subsequently purchased from Rogowski, and it paid Rogowski the proceeds of the sale with full knowledge of State Bank's lien on that grain.

underlying the Act was to remove the burden upon interstate commerce which results from subjecting purchasers of farm products to double payment for those products where the purchaser does "not know that the sale of the products violates the lender's security interest in the products, lacks any practical method for discovering the existence of the security interest, and has no reasonable means to ensure that the seller uses the sales proceeds to repay the lender." 7 U.S.C. § 1631(a)(1) (2006). Requiring strict compliance with the direct notice provision of the Act, while requiring only substantial compliance with the constructive notice provision, has no relationship to the stated purpose behind the Act. The statutory purpose of preventing double payment is clearly preserved where, as here, the purchaser (CGB) had sufficient knowledge that State Bank had a security interest in Rogowski's grain, had a practical method of discovering the existence of State Bank's security interest, and had reasonable means to ensure that Rogowski used the sale proceeds to repay State Bank. Only the illogical elevation of form over substance, which could not have been the intent of Congress in passing the Act, excuses CGB's actions. I would find that State Bank had provided sufficient notice under section 1631 of the Act to CGB of its security interest in Rogowski's grain to have required CGB to protect its interest by making the proceeds payable to both Rogowski and State Bank. I would, therefore, affirm the trial court's summary judgment for State Bank.